IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 3, 2001 Session

## J. W. HARGROVE, ET AL. v. LARRY E. CARLTON, ET AL.

**Appeal from the Chancery Court for Williamson County**
**No. 25196     Russ Heldman, Judge**

_____

**No. M2000-00250-COA-R3-CV - Filed February 14, 2001**

_____

After the defendant landowners placed gates across a roadway that ran through their land, some adjoining landowners filed suit to have the gates removed. The plaintiffs argued that the roadway was a public road, or in the alternative that they had acquired prescriptive rights to use it. The trial court ruled for the defendants. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

Jason A. Golden, Columbia, Tennessee, for the appellants, J. W. Hargrove, Pat Hargrove, Jennifer Hargrove, Janie Louise Hargrove, Lurene Nalls, and John C. Peach.

C. Dewees Berry, IV and Susan W. Foxman, Nashville, Tennessee, for the appellees, Larry E. Carlton and Michelle D. Carlton.

### OPINION

### I.
### AN OLD ROADWAY

On September 30, 1996, two adjoining tracts of land in Williamson County totaling 109 acres were transferred by warranty deed from the Carolyn C. Casparis Trust to Larry and Michele Carlton. The common boundary between the two tracts is described in the deed as running along "the center of an old abandoned roadbed." That roadway, labeled as "the Old Ridge Road" on the survey map, and elsewhere referred to only as "the Ridge Road," is the bone of contention in this case.

Casparis Road runs north from the Ridge Road, and connects to Mobley's Cut Road, which is part of the Williamson County road system. At the southern end of the Ridge Road, another road

connects to the Maury County road system at Sulphur Springs Road. The Ridge Road thus could, and sometimes did, serve as a convenient shortcut between the two counties.

The Carltons wished to combine their two tracts, to build a house for themselves, and to clear much of the land for horse pastures and hayfields. They had brush and small trees cleared, and removed an old barbed wire fence that ran along one side of the Ridge Road. When their contractor prepared to begin building the house, he placed gates at both ends of the road.

On January 20, 1998, some of the Carltons' neighbors to the south filed suit to have the gates removed. They claimed that the Ridge Road was historically a public road that had never been legally abandoned by Williamson County, and that they had no other outlet to Williamson County services, other than along the road at issue. In the alternative, they claimed that as a result of their use of it over the years, they had obtained a prescriptive easement of way over the road. The Carltons answered, denying these claims.

The case went to trial on December 1, 1999. At the conclusion of the proof, the trial court ruled that the Ridge Road had never been a public road, and that the plaintiffs had failed to show the open, continuous, and uninterrupted use of the road that would be required to establish a prescriptive easement. The court accordingly dismissed the complaint. This appeal followed.

## II.
### DEDICATION

We must note at the outset that the parties enjoyed a complete evidentiary hearing before the trial court, and therefore that in our review of this case, we must presume that the trial court's findings of fact are correct, unless the preponderance of the evidence is otherwise. Rule 13(d) Tenn. R. App. P.

The plaintiffs stipulated at trial that there had never been a formal dedication of the road, but argued that it became public because it had been open for public travel for many years, and previous owners had acquiesced in its use as a public road. Private land may become public as the result of an implied dedication, *Rogers v. Sain*, 679 S.W.2d 450 (Tenn. Ct. App. 1984), but the burden of proof required to establish such a dedication is a heavy one.

The party asserting that a public road exists as the result of an implied dedication must prove by clear and convincing evidence that there was an intention on the part of the landowner to dedicate the road to the public, and that the road was either expressly or impliedly accepted by the public. *Jackson v. Byrn* 393 S.W.2d 137, 140 (Tenn. 1965). The required intent has been described as "a plain and unequivocal intention on the part of the owner to appropriate the property to public use." *Kincaid v. Hamilton*, 70 S.W. 619 (1902). And further, "it must appear that the owner intended to permanently part with his property and vest it in the public." *McKinney v. Duncan*, 118 S.W. 683 (Tenn. 1909).

The plaintiffs alleged that both sides of the road had been fenced at one time, and they argued that the erection of the fences was "an overt act of intent to dedicate said roadway." It does not appear to us, however, that such an act by an unknown prior owner shows a plain and unequivocal intention to vest the property in the public.

The plaintiffs also testified as to use of the roadway by members of the public. Their testimony indicates that it has not been used very much in the last thirty years, but that it was in more frequent use at an earlier time. Plaintiffs J.W. Hargrove and his sister Louise Hargrove testified that they each had used the road "all my life." As children, they accompanied their father when he used the road to check fences or to travel to the Boston community north of his property. Seventy-five-year-old Louise Hargrove testified that her grandfather told her that there had once been a store and houses along the road.

Sixty-six-year-old Jim Nalls, whose invalid mother was one of the plaintiffs, testified that he used to see horseback riders or hunters on the road, and that no one ever had to ask permission to use it. He himself occasionally used the road if he was looking for some missing cows, or if he had a load of logs to haul. Seventy-five-year-old Arnold Hendricks, who spent a lot of his youth in the area because his kinfolks lived there, testified that he used to see people riding horses on the Ridge Road, but that he never saw any cars or trucks using it.

Seventy-four-year-old Renis Baker, a neighbor of the plaintiffs and a current member of the Williamson County Highway Commission, testified that he believed the Ridge Road to be a public road. He admitted, however, that it was not a county road, and that to his knowledge, the county had never done any maintenance work on it.

The appellees do not attempt to refute the historical testimony, but simply argue that the evidence is not sufficient to establish dedication of the roadway by the owner, or acceptance by the public. They point out that use of a road by the general public, even for an extended period, is not enough to create a presumption that the landowner intended to dedicate it as a public road. Appellees cite *Jackson v. State*, 46 Tenn. 532 (1869), where our Supreme Court stated that even where a road had been in existence for fifty years, that would be insufficient to constitute it a public road, in the absence of proof of the requisite intent.

In view of the importance the law attaches to the intent of the owner when an implied dedication is claimed, and of the stringent standard of proof required to establish such an intent, it appears to us that the evidence does not preponderate against the trial court's finding that the Ridge Road never was dedicated as a public road. Appellants' first argument must therefore fail.

### III.
#### EASEMENT

The requirements for establishing an easement by prescription are similar to those for adverse possession. The claimants must establish, by clear and positive proof, that they have enjoyed the use

of the property for at least twenty years, and that such use has been adverse, under claim of right, continuous, uninterrupted, visible, exclusive, and with the knowledge and acquiescence of the owner of the servient tenement. *Pevear v. Hunt*, 924 S.W.2d 114 (Tenn. Ct. App. 1996); *House v. Close*, 346 S.W.2d 445 (Tenn. Ct. App. 1961); *Nashville Trust Co. v. Evans*, 206 S.W.2d 911 (Tenn. Ct. App. 1948).

The appellants allege that the only event that ever interrupted their use of the land occurred in the 1970's, when Mr. Casparis, the defendants' predecessor in interest, had a mound of dirt placed across the middle of the road in order to block its use. According to Mr. Hargrove, his father and some of the other neighbors banded together to retain an attorney. Their attorney got in touch with Mr. Casparis' attorney, and shortly thereafter, the mound of dirt was removed.

The testimony of all the witnesses indicates that after the incident with Mr. Casparis, traffic on the road remained quite sparse. Mr. Hargrove claimed that he continued to use the road "at least once or twice a month," and that he bush hogged the road, "kept stuff cut off of it." On cross-examination, he admitted that the last time he went through with the bush hog was a few years before the Carltons bought the property. He also admitted that other than himself and members of his family, he didn't know anyone else who was using the road. Mr. Nalls testified that before the lawsuit was filed, he sometimes traveled the road on his tractor to do some work for his uncle who lived on the other end.

Mrs. Jewell Grey, has lived on Casparis Road for thirty-five years. Her house faces the road, but is set back from it. After retiring from the nursing profession twenty-one years ago, Mrs. Grey has spent a lot of time outdoors in her garden, located on the side of her house. She testified that in recent years the only person she has ever seen using the Ridge Road was Mr. Hargrove. She also stated that before the Carltons bought the land, the road had become overgrown with brush and trees, that it was impassible for cars, and that even a tractor might have to deviate onto another part of the Carltons' land to get from one end of the road to the other. The last time she saw a logging truck on the road was fifteen or twenty years ago, and the truck got stuck in the mud.

Mrs. Grey's testimony as to the poor condition of the road was consistent with several photos that were admitted into evidence, as well as with the testimony of Arnold Hendricks. Mr. Hendricks retired from the Metro Nashville Police Department fifteen or twenty years ago, and returned to the area to do some farming. He testified that when he returned, there were already trees growing in the roadbed, and that horses could use the road, but not cars.

After carefully examining the record in this case, we do not believe that the infrequent use of the road by the appellants was sufficiently continuous, open or visible to give the owners notice that others were using their land under a claim of right. *See Pevear v. Hunt*, 924 S.W.2d 114 (Tenn. Ct. App. 1996). The evidence thus does not preponderate against the trial court's determination that the appellants failed to acquire a prescriptive easement.

## IV.

The judgment of the trial court is affirmed. Remand this cause to the Chancery Court of Williamson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellants, J. W. Hargrove, Pat Hargrove, Jennifer Hargrove, Janie Louise Hargrove, Lurene Nalls, and John C. Peach.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.